The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right. Good afternoon, everybody. Welcome back to our Friday afternoon session. We have two cases left on the calendar this afternoon for hearing. First up is United States v. David Mayhew. Mr. Corzine, I understand you have some counsel to introduce to the Court, so please proceed. Yes, thank you. May it please the Court, Judge Diaz, Judge Floyd, Judge Parris, my name is John Corzine and as Director of the Wake Forest Appellate Clinic and under Local Rule 46A, it's my pleasure to introduce the two student counsel who will be arguing for Appellant David Mayhew. First, I would like to say we greatly appreciate this opportunity for experiential legal education, especially during this terrible pandemic, so we really do appreciate that. The counsel today for Mr. Mayhew, first is Kaitlyn Augerson who will be addressing the first issue on plea advice and second is Katherine Batchelor who will address the two issues about restitution. For rebuttal, there was only room on the forum for one person and we do have Ms. Augerson listed. If Ms. Batchelor has a point she'd like to make about restitution or the Court has questions about restitution, I hope there could maybe have some indulgence for one or both to address the particular issue in state or lay it during rebuttal. But again, thank you very much for this opportunity. Thank you, Mr. Corzine, and we very much appreciate your school and the students taking on this case and helping the Court with the matter. I look forward to hearing argument and we'll begin this afternoon with Ms. Augerson. Good afternoon, may it please the Court. My name is Kaitlyn Augerson and on behalf of Mayhew's Sixth Amendment right to effective counsel was violated when his trial counsel advised him that he would receive a sentence between two and five years imprisonment if he was convicted, but he received a sentence of 26 years. Under the Strickland standard established by the Supreme Court in 1984, ineffective assistance of counsel requires a showing of both deficient performance and prejudice and Mayhew meets both these standards. Starting with the first song for deficient performance, a defendant is entitled to relief when the misadvice of the lawyer is so gross as to amount to a denial of the constitutional right to the effective assistance of counsel. As this circuit saw in 2020 with Dodson against Ballard, where the defendant in Dodson alleged counsel's misunderstanding of the law which led him, which led the counsel to advise the defendant not to plead guilty and the defendant was ultimately convicted at trial and sentenced to life imprisonment when he had a plea offer for one to ten years. This circuit, this court held that counsel rendered a deficient performance when he misadvised the defendant about the elements of statutory burglary offense and the strengths of the defendant's case and the defendant suffered prejudice from such advice. Just as this, just as this court found that based on the counsel's deficient advice, which reflected his lack of knowledge of the pertinent law, the court concluded that counsel's performance was constitutionally inadequate. Similarly here, Mayhew's counsel provided such gross misadvice as to tell him that he would receive a maximum of five years if convicted at trial, but ultimately ended up with 26 years in prison. Ms. Augerson, can I, oh go ahead, go ahead. No, no, no, you go ahead, Judge Daz. I'll bet it's the same question. So how do you think, what do you think Mr. Mayhew thought with respect to this alleged misadvice? Do you think that he was misadvised as to what the maximum sentence was or as to what his potential exposure was given his particular circumstances, including any Your Honor, Ms., Your Honor, Mayhew was misled and misadvised as to not only the maximum of the, of what he would receive if convicted at trial, but his, the possibilities of consequences if going to trial. He didn't have the opportunity to make a fair judgment based on the plea offer that he was given, which was a zero to five years and what he was told would be his maximum or just general possibility if convicted at trial of two to five years. Okay, so let me, so let me stop you there. So with respect to the maximum sentence, if that's sort of the misadvice here, wasn't that effectively cured by Judge Fox's fairly careful recitation as to what the maximum sentence was for each of the counts that Mr. Mayhew was facing? No, Your Honor, it was not cured at the arraignment hearing. While the, while the government has argued that this was true, that has argued case, it has not provided the same colloquy that is seen in a Rule 11 hearing. Well, that may be true as a general sense, but this was a fairly detailed hearing. The judge went down the litany of counts that Mr. Mayhew was facing and in fairly good detail explained to him what the maximum sentence was for each count. And then on top of that, he made it very clear to Mr. Mayhew that whatever advice or estimate his lawyer may have provided as to his potential exposure was just that, an estimate, and that he was ultimately the, the sentencing authority and he would be the one who would impose sentence in this case. Now, it may be that Mr. Mayhew wasn't paying attention because he was distracted by some other things, but the question is whether or not a reasonable observer in these circumstances would have thought that that cured any potential misadvice. So what's your take on taking all of that, taking all of the circumstances in that, that in this case, why isn't this effectively cured by the judge's careful recitation in court? Your Honor, counsel's advice was not cured by the simple recitation of the sentence, the possible sentences or just the general information that was given by Judge Bloss during the arraignment hearing. The, the general statements as to informing Mayhew that yes, his counsel's estimates were just that, an estimate, is not enough to say that he was told that two to five years, two to five years. Well, you don't think, Ms. Augustine, you don't think a reasonable person would have, if he'd been paying attention, would have said, now, wait a minute. My lawyer told me he guaranteed me five years, no more than five years. And the judge is telling me that that's just an estimate. There's no guarantee of anything. It would seem to me that that would put somebody on inquiry notice that there's a disconnect there. Maybe I ought to pipe up and say something. Your Honor, Mayhew did express multiple times his concern with his counsel and his concern with the lack of preparation that had been done prior to the arraignment hearing, as well as the fact that he didn't even know that he was going in for an arraignment hearing for the day before trial. He had expressed that extreme concern that counsel had not been, had not given him the appropriate information and guidance ahead of time. Ms. Augustine, how do we, how should we interpret the counsel's unwillingness to sign that affidavit that your client filed in this case? Your Honor, as you noted, Mayhew created, wrote, drafted an affidavit. And while counsel did not sign it, counsel also did not provide a contradictory affidavit. And under the North Carolina Bar Association's formal ethics opinion from 2011, counsel had full ability and full right to write and sign their own contradictory affidavit. And they failed to do that. And they So while counsel did not sign this affidavit, they also did not provide anything to contradict the statements that Mayhew had made. Counsel, I just, in terms of where that leaves us, I understood your brief to be maybe arguing that we could find ineffective assistance on the record in front of us, rather than sending it back for a hearing. But there's nothing in the record that proves that counsel actually said this, the two-to-five-year thing. So wouldn't the most we could possibly do be to send this back for a hearing to find out what actually happened? No, Your Honor. The fact that there is no contradictory evidence from counsel or any information that would go against the statements that Mayhew has made, there is nothing to contradict his assertions or the statements. Therefore, it is enough for this to go back for sentencing. However, as you noted, if this court does not feel, does not find that there is enough information in the record, Mayhew is at the very least entitled to an evidentiary hearing. In United States, Verce Hall from the district in 2019, on appeal district, it noted that the defendant in that case submitted an affidavit raising complaints about the advice he had received from trial counsel. However, in that case, trial counsel had in fact submitted a contradictory affidavit. Ms. Augerson, can I ask you a question related to what Judge Harris just asked you? So what is the competent evidence with respect to the allegations related to the guarantee? Is there an affidavit in this record from your client? Mayhew has drafted an affidavit on behalf of counsel. However, as we noted, that was not signed. No, no, I'm asking you whether Mr. Mayhew ever signed something under oath saying, I was offered, I was, I was given advice as to a guarantee. Your Honor, I see that my time is almost up. May I answer your question and conclude? Yes, please. Mayhew did file a pro se motion to reconsider three months prior to sentencing. And in this motion to reconsider, he stated his extreme concerns with counsel and he did state that he had been repeatedly told this two to five year range. In conclusion, we ask that this court vacate David Mayhew's judgment and remand for resentencing or at the very least, Mayhew is entitled to an evidentiary hearing to establish his allegations. Before we let you get away, I just want to ask if any of my colleagues have any additional questions of Ms. Augerson? No, sir. Okay, thank you very much. All right, Ms. Batchelor, we'll hear from you. Your Honor, my name is Catherine Batchelor and on behalf of Appellant David Mayhew, I will be discussing issues two and three. Turning to issue two, Mayhew- Ms. Batchelor, can you get a little closer to your mic? I'm having a little trouble hearing you. Can you, can you hear me now? Yes. Is that better? Yes. Yes. Turning to issue two, Mayhew's ineffective assistance of counsel claim regarding the restitution sum is cognizable under 28 U.S.C. 2255. This result can be reached applying the Supreme Court's jurisdictional analysis from Gonzales v. Bayer in 2012. In Gonzales v. Bayer, the Supreme Court interpreted the language of a different habeas statute to determine whether the Fifth Circuit had jurisdiction over Gonzales. The Gonzales court held that, quote, a rule is jurisdictional if the legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional. Counsel, it's Judge Harrison. I apologize for interrupting, but we have such limited time. It seems to me that whether or not it's jurisdictional isn't exactly enough to get you where you need to go. Even if we thought this rule were not jurisdictional, do you want to get to the part where the statute's text seems to limit it to cases where someone is seeking release from prison rather than just challenging the amount of money they have to pay? Because even if it's not jurisdictional, it might still be a mandatory rule. Yes, Your Honor. In February of 2020, the Sixth Circuit in Wagner v. United States actually applied the Gonzales court's jurisdictional analysis to the language of 2255A and particularly the provision that claiming a right to be released. And the Sixth Circuit court concluded that because Congress has not indicated with sufficient clarity that, quote, claiming the right to be released is jurisdictional, that court should... Okay, counsel, I think I'm not being clear about my question. I will assume for the sake of argument, this is not jurisdictional. A court doesn't lose jurisdiction because someone is not seeking release from prison. My question is whether it's jurisdictional or not, why is there a cause of action under 2255 if you're not seeking a release from prison and you're only challenging the amount of money you have to pay? I'm assuming it's not jurisdictional, but I want to know why you can go forward. Why is there a cause of action? Your Honor, well, looking at the case law from the Sixth Circuit, in 2005, a panel of this court in Lussenhop v. United States allowed a defendant to use a 2255 motion to allege that his restitution order would have been substantially less had it not been for the ineffective assistance of his counsel. Ms. Batchelor, let me ask you, shouldn't your answer to that question be that the guidelines regarding the restitution were improperly calculated so it drove the sentence higher? Yes, Your Honor, yes, and that would fall under if this court chose to adopt a standard that's suggested by a panel of the circuit in Hudgens v. United States, that a 2255 motion cannot be used for the sole purpose of challenging fines. Here, Mayhew is not alleging a claim of ineffective assistance of counsel. That is challenging solely the amount of fines because he is also challenging how those restitution... I don't think we granted a COA on the issue of the sentence. The certificate here is limited to the issue of restitution alone. Isn't that right? So why isn't that separate issue of sentencing effectively waived here? Your Honor, I believe that the certificate of appealability was in regard to the restitution sums and not the restitution order, and that inclusion of those particular restitution sums that were the subject of dismiss charges were also included within the range of sentencing for the base defense level. Counsel, I don't want to tell you how to argue your case, but it looks like what we granted the certificate of appealability on was whether Mayhew's particular claim that defense counsel rendered ineffective assistance in failing to object to restitution sums is cognizable. And I thought Judge Floyd was suggesting that your argument might be that, yes, his claim was cognizable because the failure to object to restitution sums actually affected his sentence. Yes, Your Honor. Yes. And because the failure to object to restitution not only affected his restitution order, it affected his base offense level because it increased by two points. And so the inclusion of those sums from the dismiss charges raised the base offense level. And the Supreme Court in Pelina-Martinez versus against the United States from 2016 has said that where, has highlighted that the sentencing guidelines play a central role in sentencing so that any related error is particularly presidential, even where, as in a case like the one before it, the judge upwardly departs, that where the starting point was incorrect because of a counsel's failure to, or as in this case, counsel's failure to remedy it, Mr. Mayhew was prejudiced because his base offense level started at the wrong spot. Okay. So if that's your theory, I just have one question. So the petition itself, the 2255 petition in the, I think it's issue 12 that describes this problem, it ends by asking that the restitution order be vacated. Is that a problem? That the relief that's sought under this issue is not a resentencing or a vacature of the sentence, but that the restitution order itself be vacated? Your Honor, in the per se motion, while that is the, um, a specific ask of relief at the end, the motion also includes, um, the argument about the effect on sentencing guidelines and how, um, it increases base offense level because it should not have been included. So I don't believe that while perhaps the last, uh, conclusion in the motion was about the restitution order, that the entirety of the motion is arguing that it's also tied to the sentencing guidelines. So you think we could liberally read this petition as we should for a pro se petitioner to be challenging the sentence as well as the restitution order? Yes, Your Honor. Uh, resolving in favor of the defendant, yes. Um, uh, and so, uh, and because Mr. Mayhew, uh, as counsel did not object to the sums from the dismissed charges, uh, for both the dismissed charges before trial and the, uh, uh, amounts from the dismissed charges at trial, it was objectively unreasonable to do so. And his failure prejudiced Mr. Mayhew both in the amount of the restitution order as well as where his base offense level started for sentencing court, uh, demand for his sentencing. Thank you. Thank you, uh, Ms. Batchelor. Um, Mr. Bragdon, we'll hear from you. Thank you. May it please the court. I'd like to start by, uh, commending my, my colleague, colleagues and students for, uh, very excellent briefing and argument in this case. Um, I do appreciate that. On Mayhew's first claim, when we look at prejudice, he has to show, uh, a reasonable probability that he went to trial because he was guaranteed no more than five years in prison. And, and I say that for a couple of reasons. First of all, the alleged error here, and there's been no resolution of whether or not there was any attorney misadvice. So we're, we're assuming that, um, we're assuming that his statements are true because there was not an evidentiary hearing. But when we look at this, the error is not mis-estimating the guidelines or mis-estimating the sentence. Um, a number of cases that we cited in our 28J letter established that it's not, uh, ineffective assistance to give bad advice about the guidelines. The only error here that's alleged is that the attorney improperly made this guarantee that it was no more than five years in prison. And if we assume that that's true, the court corrected that. And we can know... Counselor, can I ask you a question about the court correcting it? So I know we have all these cases, um, where we say the district court, uh, even where there has been this gross misadvice, the district court fixes it during a Rule 11 colloquy and before the defendant accepts the plea by informing the defendant of his actual sentencing exposure. But there wasn't a Rule 11 colloquy here because the defendant didn't plead guilty. And so he wasn't advised of his sentencing exposure by the judge before he accepted a plea. He was advised of his sentencing exposure after he already rejected the plea. Um, and so I don't really see how those cases address this problem. He had already rejected the plea. There's nothing in the record to suggest that after he was advised that his attorney was wrong, the plea was put back on the table. The government said, now do you want to reconsider? So I don't see how you can fix it. It's sort of like a cat out of the bag problem. How does it fix it if... I mean, he is alleging the prejudicial effect happened at the moment he turned down the government's plea. And the government's own brief, very forthrightly, says that was the night before the arraignment. That's when that went down. And then the next day, he's given information that maybe convinces him, wow, I might have screwed up last night, but how does that help anything? Well, Your Honor, I do think the question here is, is this but-for question of what would he have done if he had been received good advice? And he answers that question because... Okay, sorry. Should I take from your answer to my question that you are off this point, that you are conceding that the fact that he was advised of his sentencing exposure after he had already turned down the plea sort of washes that element out, and now we're down to this but-for question under Laffler? I guess I don't separate those two points, Your Honor. And if you could just let me explain for a minute. I think that... I do agree that this doesn't present the exact same situation that the plea agreement situations present. But I think what it does present is the court gives him good advice. And after this good advice, he says, I still want to go to trial. And let me get the language right. He says, I have every intention of going to trial and want to go to trial. He doesn't say, well, actually, I want to take that plea now. He doesn't say, you know, Your Honor, I need... Let us have time to reconsider and take this plea. He gives absolutely no indication that some guarantee had any effect on this. And so the court corrects the advice. He has a chance to say anything, something about it. And what the only thing he does say is, I want to go to trial. And so I think that conclusively answers the question of, did this under Laffler, did this make a decision and a difference in his decision to to plead guilty or not guilty? And the answer is no, because he, despite the good advice, he still announces his intent to go to trial and plead not guilty. I mean, I assume that if there were a hearing, he would come into court and say, I had already turned down the plea. I had no idea that that was something I could take back after the fact. So this and whether he can prove that or not at a hearing, I don't know. But it seems hard to me conclusively clear on the record that he absolutely like it made no difference. And that's the standard, right? You say in your brief that the standard is if it is not conclusively presented on the record that there was an issue, the defendant loses. But that's wrong. It's that if it's not conclusive on the record, then there has to be a hearing, right? That is correct. Mr. Bragdon, let me ask you a question about the how how are the how is the restitution order and the guidelines restitution amounts different or if they are? Yes, Your Honor. Well, in the pre-sentence report, they calculated restitution and and loss amount to be the same, but they use two different standards to calculate those. And I will note that this court has already heard an appeal on direct appeal about the loss amount. And it affirmed the loss amount based on the appeal that came before it that was objected to in sentencing. It was appealed before this court. This court affirmed so that the it is a separate calculation. And if you'll give me a second, let me give the court the difference between the two legal standards. So when we consider restitution, the question in a case like this where we're looking at where we're looking at a scheme or a conspiracy, the question is, is it part of the same course of conduct or common scheme plan as the defense of conviction with respect to one of the elements? So that's the question for restitution. For loss, it can be any an act taken in furtherance of a scheme, conspiracy, or pattern of criminal activity. Oh, actually, I'm sorry. I apologize. I reversed those two. The first one I gave is actually loss. So it can either be a part of the same course of conduct or a common scheme of plan. With restitution, it has to be in furtherance of the scheme or pattern that is specifically included as an element of the offense of conviction. And so the difference is really that any common scheme or plan is counted as loss. And so even if we say, even if it were true, to give the example of the United Global Investments, that was a scheme to defraud that occurred after Mayhew's initial indictment. So while he's on pretrial release, he commits a new fraud scheme. There's $298,000 that's part of loss and restitution. There is no doubt that that's includable as loss, absolutely no doubt, because that's grouped for purposes of the sentencing guidelines. It's part of the common scheme and plan, and it's includable. For restitution, the defendant argues a different thing. They say, well, this is not a part of the scheme that was the offense of conviction. It's outside of the time frame. It's a different scope of conduct. And that may be true. That's not an issue the district court considered below. But that is an issue that only impacts restitution. If that's a mistake, it has absolutely no impact on the loss amount, which this court has already affirmed. It only impacts restitution. Mr. Bragdon, I thought that part of the defendant's argument in this case was that part of the restitution amount included amounts for conduct on counts that either had been dismissed or on which he had been acquitted. Is that right? Do I have that right? That's correct. And so the counts that were dismissed before trial were the United Global Investment Counts. Right. So is there any question that, I mean, a timely objection to those portions of the restitution order would have been sustained? So let me split hairs a little bit, Your Honor. The counts that were dismissed at trial relating to McGrath and Fergus, those should have been included as restitution regardless, because they were a part of, they were conducted in furtherance of the scheme of fraud. And I just want to note, I can note a couple things in the record to identify that. If the court looks at the indictment, the liars are all within the time period of the conspiracy and the scheme to fraud with respect to McGrath and Fergus. There's no doubt that these acts are done in furtherance of the scheme to the fraud. And when you look at the conspiracy itself, the overt acts of the these wires that were sent, even if they were dismissed because they didn't meet the interstate element, they were still a part of the scheme to fraud. With respect to the United Global Investments, which was the counts dismissed before trial, that is not within the time period of a wire fraud scheme or mail fraud scheme or a conspiracy. And so I would not, I would not that if an objection was made that that $298,000 should not have been included as part of the restitution. Okay, so that's true then. So what are we to do about that given the current posture of this case? So I think if we look at the case law, when you look at 2255, habeas is limited to questions about being released from custody, issues that concern release from custody. Nine circuits have now come down and published decisions and said that an issue that's just financial cannot be part of a claim for habeas under 2255. So just assuming hypothetically we agree, I just want to just because our time is so short, can you get to the argument that, well, that's not all he's asking for here is relief from the restitution order. He's saying it affects his sentence. And so that would be cognizable, right? Well, yes, Your Honor. And I apologize. I thought I was addressing that already by saying that restitution has nothing to do with loss. So can I say one of my concerns, right, is that the district court in, I mean, he had a lot of claims in front of him. And so in addressing this one, he made this point with which I've asked you to assume, at least I agree, that just this is not cognizable under 2255 because it's about relief from restitution orders. The district court never had an opportunity to consider this the failure to object to the restitution order. Did that affect the sentence? Wouldn't it make sense for us to send this back at a minimum and let the district court take a look at that rather than trying to work that all out ourselves now? No, Your Honor, for a couple reasons. The first reason is it is, I think, legally indisputable that loss and restitution are separate and that restitution, as a matter of law, no matter how it's calculated, has no impact on loss. Second, this court has already affirmed based on loss and the defendant did not bring a second separate case for loss. And third, I could be misremembering, but I believe the defendant did say that restitution and loss were related together in his habeas petition. I think he did make that argument and the court rejected that when they said this is just about restitution, it doesn't have any impact on this. And I would also point to the court to three cases that say even if there's multiple issues, even if there's a claim that affects imprisonment and a separate Kamensky, which is a Second Circuit case in our brief, which states that issue. We cited Thiel, which is a Ninth Circuit case. And then I would also note Mamone is an Eleventh Circuit case that's not in our brief, 559F3-1209. And when you look at these cases, the Second and Ninth Circuit both said non-cognizable claims do not morph into cognizable ones by osmosis. And so they make the point that you can't turn in, you can't turn a financial claim into an imprisonment claim just by adding an imprisonment element to it. The defendant has not. So Mr. Bragdon, if we assume that there was deficient performance, then the question is when, if at all, during the process is a defendant supposed to bring this claim? If he can't do it in a 2255 petition, when is he or she supposed to do it? I do not have a conclusive answer to that question, Your Honor, but I will say a couple of opportunities at the time of the initial hearing and on direct appeal. Those were not taken here. Second, habeas is not intended to remedy everything. It's a limited remedy. It's focused on most important wrongs. And in doing that, the Congress specifically focused it on crimes that relate to imprisonment. That's how they limited them. And so not everything can be done in that respect. The third thing I'll say is that some courts have looked at quorum nobis as a potential remedy here. And I think if you had an unusual remedy, an unusual case where this was said here, is here there's an over $2 million restitutional. If the defendant made every payment required by the district court over the course of his 26 years imprisonment and his three years of supervised release, he'll have played less than $25,000. This is not a case where that $298,000 is likely to have any impact on him or the amount that he pays. And so I do not think it's an unusual extreme case that needs a remedy. If it is, I think other courts have said quorum nobis may provide an unusual situation, a remedy to this case. I doubt that this case is that one. I think I did want to mention the Sixth Circuit is the only circuit that has said a restitution award can be brought in a habeas position. And I wanted to note the situation in which they did that is somewhat unusual. There was a Sixth Circuit case that came out initially, and let me just get my notes. In 1995, there was a Sixth Circuit case called Watrova. And that case came out and said certain financial remedies, I think it may have been a fine in that case, can cannot be brought as part of a habeas petition. Well, a number of other courts cited that and, you know, looked at that as they're considering this issue. In 2001, in the Weinberger decision, which the defendant cites, the Sixth Circuit in a footnote says, we're not going to apply that earlier case to restitution. And we realize that a number of cases have gone the other way on this. We recognize those cases. But we feel bound by a 1993 case in which we allowed habeas restitution to be brought in a habeas case. And so that Sixth Circuit case does not. Mr. Brangden, before you run out of time here, I did want to bring you back to the first claim because of Judge Harris's questions regarding the timing of this and the context in which it appears. So I'm trying to think what an evidentiary hearing would provide us that we don't have already with respect to the assumptions that are being made here, right? The question is, first of all, did the lawyer provide deficient advice? And we're got what happened on the record at the hearing. And maybe this is a question better presented to your colleagues on the other side, is what else could Mr. Mayhew present other than to say, obviously, that he would have taken the plea, but for this deficient advice? We just need to measure that against what the record evidence shows happened at that arraignment. Isn't that right? Yes. And could I could I answer a little more fully? Yes, please. Okay. I do see recognize I'm out of time. So I'll be brief. The one thing I'll say quickly is in our district, an arraignment serves the same function as a rule of 11. And so in our district, it's relatively unusual. The warnings, the advice, a lot of that is the same. Arraignment kind of fills the function of a rule of 11. And here, I think that, you know, this was the defendant's chance to say, did he want to plead guilty? Did he want to go to trial? And I think if he had actually really wanted to take the plea, if he thought that this was a good deal, there would have been something said about that. And so I think the courts look conclusively about the statement, the sworn statements that defendants make. This is a sworn statement. And in that sworn statement, he both pleads not guilty and says that he wants to go to trial. The one other thing that I'll point to, and this is not a part, it's a part of the record, it's not part of the joint appendix, but docket entry 103 is a docket entry that discusses Mayhew's many complaints with his four other attorneys that appeared before this one. And if you look at it, many of those complaints are very similar to the complaints he makes against Jeff Hofstede. It makes it relatively clear that he wants to go to trial no matter what. And I recognize all of that would be appropriate at an evidentiary hearing, but I don't think the defendant has shown here that good advice would have made any difference in his decision, even enough to warrant an evidentiary hearing. All right. Thank you very much. Thank you. I ask the court to confirm. Do my colleagues have any additional questions of Mr. Bragdon? Oh, okay. Ms. Augerson, you've got some time for rebuttal, and I may offer a little bit of time to Ms. Batchelor as well. So go ahead. Thank you, Your Honor. I have two points on rebuttal. First, addressing Judge Diaz's earlier question, on page 255 of the joint appendix, this includes Mayhew's motion under section 2255 that is akin to an affidavit and signed under penalty and perjury regarding Mayhew's belief and understanding that he had been told that he would receive a maximum of five years if convicted at trial. Second, opposing counsel argues that because Mayhew stated that he had the intention to go to trial, that this is sufficient to cure counsel's gross misadvice to Mayhew. However, as Judge Harris noted, an arraignment hearing is fundamentally different than a Rule 11 hearing. Mayhew was relying on his counsel's advice and was under the impression that his exposure at trial would be nearly equivalent to that if he took the plea agreement, making trial a very favorable option. Additionally, Mayhew did not even know that he was attending an arraignment hearing that day. He thought he was going in to discuss the letters that he had sent to Judge and did not provide this level of specificity or clarity that would have been provided at a Rule 11 hearing. Ms. Ogerson, can I ask you about that point? Is your point that he was just caught off guard and so we shouldn't hold it against him that if he might not have been paying as rapt attention as he might otherwise, had he been given notice that this was an arraignment? No, Your Honor. It's not simply the fact that he didn't know that it was the arraignment hearing. That is not the sole point. The issue is that the Rule 11 hearings provide such a great level of specificity and a conversation back and forth between the judge and the defendant, ensuring that the defendant does in fact understand and responds to each question and each issue. Here, that is not what happened, which is not a part of an arraignment hearing. It was simply information that was told to the defendant and he did not have any opportunity or was not expected to respond, ensuring that he understood only the implications and the effect of the arraignment hearing that would happen at a Rule 11 hearing where it had taken the seat of office. All right, Ms. Ogerson, let me stop you there. I'm going to give your in this hearing. Go ahead, Ms. Batchelor. Your Honor, we would only add, per the discussion of what available remedy there would be, if Mr. Mayhew did not have a 2255 motion available for him, we believe that he would be left without a remedy for the erroneous inclusion of the dismissed amounts. Well, can I ask you about that? So is that really correct? I mean, I suppose we say often, and I think correctly, so that we don't normally consider ineffective assistance of counsel claims on direct appeal because it needs, you know, development of the record and the like, and that makes a lot of sense. But if a claim is so obvious, there's so obviously deficient performance with respect to acquitted conduct that restitution could never be a part of that, that amount should never be a part of restitution. Why couldn't Mr. Mayhew present that on direct appeal? Your Honor, the objection that was made both at sentencing to the restitution and was the objection that was to the restitution on direct appeal was about how the loss was calculated and not, as you're saying, this very clear misinclusion of that loss. And so we believe that it was, especially on the charges that were dismissed at trial, it was on the motion of Mayhew's counsel that those charges were dismissed at trial, so he knew very well that those amounts should not have been included in restitution, and that's why we believe that it was objectively unreasonable conduct and deficient performance, which is, again, appropriate for an ineffective assistance of counsel claim, which, yes, yes, Your Honor. No, I'm sorry. I didn't mean to cut you off. Go ahead. Which this court has on repeated occasions held that a 2255 motion is the appropriate vehicle for an ineffective assistance of counsel claim. I don't want to interrupt anything, but I just wanted to make sure that you would have a chance to respond to what I take to be the government's sort of main argument on this claim, which is even if the restitution order was higher than it should have been because of ineffective assistance, that would not have affected the loss amount at all. So there is no effect on the sentence. Did you want to respond to that? Your Honor, the government, in their brief on page 29, actually says that in this case, the loss amount and the restitution amount are essentially in this particular case, those two are the same and that that was how the court was using them and presenting them. And we believe that there is ambiguity in how the sentencing guidelines construe the loss from dismissed charges and their inclusion in for the purpose base offense level sentencing. And accordingly, we think that on it, in particular on this case, that the dismissed charges amounts do go both to restitution and the sentencing guidelines and that the lack of objection to that was both and that it's not actually as clear of a distinction as the government is contending. All right. Thank you. Thank you, Ms. Batchelor. I want to join Mr. Bragdon in complimenting both Ms. Augerson and Ms. Batchelor on their presentations here this afternoon and in the briefs. You all are court appointed and obviously we could not do the work that we do without talented lawyers. And in this case, student counsel being willing and able to their cases before this court, you've done so ably. And I also want to thank Mr. Bragdon for ably representing the government in this case. We would typically come down from the bench and personally greet each of you. Obviously, we're not able to do that here today, but please know that you have our thanks and gratitude for a job well done. So thank you very much. You're welcome. If my colleagues have no objection, we'll proceed on to the next case.
judges: Albert Diaz, Henry F. Floyd, Pamela A. Harris